NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

WILFREDO J. ORTIZ, et ux.,

        Plaintiffs,

        v.

THOMAS F. ADAMS, et al.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:

**OPINION**

Civ. No. 2:08-cv-04509 (WHW)

---

TRAVELERS OF NEW JERSEY,

        Plaintiffs,

        v.

RUAN TRANSPORT CORPORATION, et al.,

        Defendants.

:
:
:
:
:
:
:
:
:
:
:

---

THOMAS F. ADAMS and RUAN
TRANSPORT CORPORATION,

    Defendants and Third-Party Plaintiffs,

        v.

J AND B RESTAURANT ASSOCIATES,
L.L.C., ABC COMPANIES 1–10 (Said being
fictitious entities), JOHN DOES 1–20 (Said
being fictitious individuals),

    Third-Party Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:

---

1

NOT FOR PUBLICATION

**Walls, Senior District Judge**

This matter concerns an automobile collision involving Plaintiff Wilfredo J. Ortiz and

Defendant Thomas F. Adams. Currently before the Court are Plaintiff Wilfredo Ortiz's motions

in limine and motion for summary judgment as to liability. Also before the Court is Defendants/

Third Party Plaintiffs' cross motion for summary judgment and motions in limine. Decided

without oral argument under Local Rule 78, the motions are denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter arises out of an automobile collision involving a personal vehicle and a

commercial tractor trailer on November 2, 2006 on Route 17 North in Bergen County, New

Jersey. Plaintiff is Wilfredo J. Ortiz, the driver of the personal automobile. Defendants are the

driver of the commercial truck Thomas F. Adams and truck owners Ruan Transport Corporation

("Ruan"). Defendants Adams and Ruan filed a third party complaint against J and B Restaurant

Associates ("J and B"), owners of Stony Hill Inn, an establishment that served Plaintiff alcohol

on the night of the collision.[1]

On the night of the collision, Plaintiff Wilfredo J. Ortiz was traveling north bound on

Route 17 in the righthand lane. Pl's. Summ. J. Br. at 5, ECF No. 149-3. At the same time,

Defendant Adams was operating a Volvo tractor trailer owned by Ruan in the driveway of the

commercial store Direct Buy. *Id.* While attempting to negotiate the driveway to Direct Buy,

Defendant Adams turned his tractor-trailer into a southerly jackknife position on to Route 17

North with his high beams activated. *Id.* at 6, 9. Defendant Adams testified that he saw Plaintiff's

---

[1] This case was also consolidated with a related insurance action previously Civil No. 09-1688, ECF No. 14.

2

head turn to the right at a 45 degree angle immediately before impact. *Id.* Plaintiff's car collided with Defendant's tractor trailer, causing damage to both vehicles and rendering them unable to drive. *Id.* at 15. The tractor trailer remained positioned in the roadway as it was at the time of impact. *Id.* From where Defendant Adams pulled into Route 17, there is a clear southerly view of approximately a quarter of a mile. *Id.* at 7.

Defendant Adams testified that only approximately one foot of his right fender was over the white line into the right lane at the time of the collision. *Id.* at 16. In accordance with company policy, Defendant Adams took pictures of the vehicle and its position after impact and prepared a collision report and diagram after the collision. *Id.* at 16–17. Emergency responders arrived soon after, and Police Officer Gallagher conducted an investigation on the scene. *Id.* at 10. Gallagher did not find any alcohol use or abuse, and reported Plaintiff's physical status as "Apparently Normal." *Id.* In his report, he found "Driver Inattention" as an "Apparent Contributing Factor" on the part of Defendant Adams, and "none" on the part of Plaintiff. *Id.* Officer Gallagher testified that in his opinion, the collision was caused by Defendant Adams' creating a hazard by blocking the roadway as Mr. Ortiz was driving straight in the right of way. *Id.* at 11. According to Plaintiff, Defendant Adams was facing south in the northbound lane, and the collision occurred because Defendant Adams suddenly drove out of the parking, temporarily blinding Plaintiff and giving him no time to react. *Id.* at 11, 15–16

Defendants have a different account of the events that night. They assert that when Plaintiff first saw the tractor trailer, it was not facing him head-on, but was instead perpendicular to his direction of travel. Defs.' Summ. J. Opp. at 13, ECF No. 165. Defendants also assert that Plaintiff had adequate time to stop before colliding with Defendant's tractor trailer. Eye Witness Matthew McCarter, who had been with Plaintiff at the Stony Hill Inn earlier in the evening and

was driving behind Plaintiff at the time of the collision, observed the tractor perpendicular to the northbound lanes and was able to stop before getting to the tractor trailer. *Id.* McCarter did not see Plaintiff apply his brakes after seeing the tractor trailer, and the police report did not mention skid marks. *Id.* Defendants also point out that Plaintiff stated that he believed he had time to brake before impact and acknowledged that he consumed alcohol. *Id.* at 13. Alcohol was detected on Plaintiff's breath both at Stony Hill Inn before the collision and at the Hackensack University Medical Center ("HUMC") after the collision. *Id.* at 13–14. Plaintiff's blood alcohol level was tested at HUMC and was recorded at .234.1 mg/dl. *Id.*

On February 3, 2008, Plaintiff brought a negligence suit in New Jersey Superior Court. Complaint, Not. of Removal, Ex. A, ECF No. 1. The case was removed to this Court on September 9, 2008. *Id.*

On March 26, 2012, Defendants J and B moved for summary judgment arguing that they were not liable under the Dram Shop Act because there was no evidence from which a jury could find that Plaintiff was visibly intoxicated at the time J and B served him alcohol. ECF No. 60. This Court denied summary judgment, finding that Plaintiff's visible intoxication raised a question of fact. ECF No. 71.

On August 11, 2017, Plaintiff filed four motions which are currently before the Court. Plaintiff filed a motion for summary judgment and three motions in limine: (1) for an adverse inference due to spoliation of evidence; (2) to bar blood alcohol lab results as untrustworthy; and (3) to bar evidence of Plaintiff's alcohol use as unduly prejudicial. ECF Nos. 146–49.

On October 6, 2017, Defendants Adams and Ruan filed oppositions to Plaintiff's motion for summary judgment and motions in limine. ECF Nos. 162–65. On October 13, 2017, Plaintiff replied to all four motions. ECF No. 166–69.

Third Party Defendant J and B also has motions pending before this Court. On September 11, 2017, J and B filed three motions in limine, relying entirely on Plaintiff's briefs, regarding spoliation, blood tests, and evidence of alcohol use. ECF Nos. 157–59. J and B also filed a cross motion for summary judgment on September 21, 2017 ECF No. 160. Third Party Plaintiffs Adams and Ruan opposed the cross motion for summary judgment on October 6, 2017. ECF No. 161. On October 19, 2017, Third Party Defendant J and B Restaurant Associates filed a reply brief. ECF No. 171.

The Court will first consider Plaintiff's evidentiary motions, and then consider Plaintiff's motion for summary judgment. Finally, the Court will consider Third Party Defendants' motion for summary judgment.

## DISCUSSION

### I.    Plaintiff's Evidentiary Motions

#### a.   Motion for sanctions due to spoliation of evidence

Plaintiff moves for an adverse inference to do spoliation of evidence. Pl's. Spoliation Mot., ECF No. 146. Plaintiff contends that Defendants have withheld documentation of the accident which was created by Defendant Adams after the crash under Defendants' internal protocol. Specifically, Plaintiff seeks an adverse inference with regard to photographs of the crash, a collision report, and a collision diagram prepared by Defendant Adams after the crash in accordance with Defendant Ruan's internal protocol. Pl's. Spoliation Br. at 14–15, ECF No. 146-3. In a January 29, 2010 deposition, Defendant Adams stated that his reports were different than those prepared by the police. Adams Dep. 74: 11–43, Maggiano Cert., Ex. C, ECF No. 143-8.

Defendants respond that no adverse inference is appropriate. Defendants assert that Plaintiffs never forwarded Defendants notice to produce the documents or moved to compel their discovery. Defs.' Spoliation Opp. at 2, ECF No. 162. Defendants assert that, as they stated in their September 9, 2009 Interrogatory Response, Defendant Ruan was and is unable to locate the photographs and reports.

"Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012).

The first, second, and fourth elements are met in this case. Defendant Adams created the documents pursuant to company policy and turned the camera over to company management following the accident. Adams Dep. at 40: 6–8. The photographs and reports contain information depicting and describing the circumstances of the collision and the position of Defendant's tractor trailer. One of the primary factual disputes in this case is whether Plaintiff had adequate time to avoid the collision, and photographs and reports immediately following the accident are relevant to this question. It is also reasonably foreseeable that Defendants would have a duty to preserve records taken following an accident pursuant to its internal protocols.

However, to find spoliation, there be "actual suppression or withholding of evidence." The Third Circuit has held that "[n]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed." *Bull*, 665 F.3d at 79 (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). Therefore, there must be a showing of bad faith. *Id.* ("Withholding requires intent."); *see Peterson v. Attorney General Pa.*, 551 F. App'x 626, 628 (3d Cir. 2014) (denying motion for

adverse inference because moving party "did not come close to showing the bad faith necessary to support a claim for spoliation"); *Kachigian v. Berkshire Life Ins. Co. of Am.*, No. 09-6217 (DEA), 2013 WL 1338288, at \*4 (D.N.J. 2013) (denying motion for adverse inference, noting "the record does not demonstrate any bad faith or intent on the part of Plaintiff to withhold the documents").

Plaintiffs argue that "[c]learly where there is no explanation of pivotal information created in anticipation of foreseeable litigation documenting a critical fact . . . there has been suppression or withholding of critical liability evidence." Pls.' Spoliation Br. at 20. That argument fails to recognize the requirement that to demonstrate spoliation, there must be a showing of bad faith. *See Bull*, 665 F.3d at 79; *Granger v. Acme Abstract Co., LLC*, No. 09-2119-NLH-KMW, 2012 WL 12910262, at \*3 (D.N.J. Jun. 14, 2012) (denying motion for spoliation because "while the duty to preserve the [evidence] was foreseeable, there is simply no evidence that the destruction or suppression of the logs amounts to anything more than negligence"). Defendant Adams stated in his November 9, 2009 Answer to Interrogatories that his employer had searched for the documents, but was unable to locate them. Answer of Defendant to Uniform Interrogatories, Defs.' Ex. 1. Defendants still maintain that Ruan management and technicians searched for the photographs and documents to no vail. Defs.' Br. at 9. Plaintiffs have no evidence that the records were withheld in bad faith rather than inadvertently misplaced.

Plaintiffs' argument is further weakened by their delay in bringing this matter to the Court's attention. Plaintiffs do not claim to have ever moved for production of the documents. Plaintiffs raise two arguments that they requested the documents. First, they point to the Adams Deposition, in which Plaintiffs' counsel engaged a line of questioning about the photographs and

reports, and then asks Defense counsel that they be produced. Adams 2010 Dep. 74: 14–16, Maggiano Cert. Ex. C, ECF No. 146-8. Second, Plaintiffs contend that the records were withheld in violation of the initial pretrial scheduling order because they are mandatory disclosures under Federal Rule of Civil Procedure 26(a)(1)(A)(ii). Neither argument is convincing.

At the January 29, 2010 Adams Deposition, Defense counsel acknowledged that it would continue searching for the documents, and asked Plaintiffs to submit a written request for the photographs and documents. Adams 2010 Dep. 74: 17–20 ("I will pass your request [for the documents] along, but I would ask that at some reasonable time you provide me with a written request for any items that you wish."). Plaintiffs do not claim they submitted any written request in response or otherwise pursued the documents in the eight years since this verbal exchange.

Plaintiffs' dilatory approach to these documents is further emphasized by their second argument. The initial scheduling order required production of initial disclosures by December 18, 2008 – nearly ten years ago. Pls'. Spoliation Reply at 4, ECF No. 168.

Because Plaintiffs have not demonstrated that the documents were withheld intentionally or in bad faith, their motion for an adverse inference due to spoliation of evidence is denied. Similarly, Third Party Defendants' motion relying upon Plaintiff's brief is denied.

### b. Motion in limine to bar blood alcohol lab results as untrustworthy under FRE 806(E)

Plaintiff argues that the blood alcohol lab results from HUMC is not admissible as a business record because it is not trustworthy. Pl.'s. 806(E) Br. at 25, ECF No. 147-2.

In her deposition, Nurse Monica Sampedro, the individual who drew Plaintiff's blood, provided testimony about HUMC's blood-test protocol. Sampedro Dep. 9:4–16:16, Maggiano Cert. Ex. Q, ECF No. 147-33. Ms. Sampedro explained that each patient is assigned a "trauma pack" upon arrival, which contains an I.D. bracelet and pre-marked trauma tubes. *Id.* 11:4–11:25.

When the tubes are filled, one person reads the numbers from the tube while another confirms that the identification number matches the I.D. bracelet on the patient. *Id.* 10:14–11:3. The tubes are filled with the specimen, and then physically handed to a lab technician, who again confirms the patient identification number. *Id.* 12:7–18. The technician then receives the samples and places them in the hospital's pneumatic tube system, which transports the blood samples to the lab. *Id.* 15:17–16:16.

Barbara O'Hara, Director of Chemistry in the HUMC lab, explained the procedures after the lab receives the tube. After the tube is received in the lab, the lab clerk creates a new barcode label matching the identifiers on the tube, and loads the tube into the instrument. Ohara Dep. 11:20–14:7, Maggiano Cert. Ex. R, ECF No. 147-34. When the sample is tested, the results are generated with accompanying patient identification. *Id.* 15:17–25. A tech then confirms the results, and uploads them to the hospital's internal system for immediate viewing by the medical staff on computer monitors in the emergency room. *Id.* 28:8–11.

Plaintiff contends that HUMC violated nationally accepted standards for collecting, transferring, and testing the specimen. Plaintiff argues that the test results are untrustworthy because HUMC did not maintain a formal chain of custody of the sample, because the sample has inconsistent recordings for the time of collection, and because HUMC uses pre-labeled tubes.

Defendants respond that the blood tests are admissible as a business record, and that Plaintiff's arguments go to the weight of the evidence, not its admissibility. Defs.' 806(E) Br. at 6, ECF No. 163. Defendants argue that there is no requirement that a formal chain of custody be demonstrated for the blood tests to be considered trustworthy.[2]

---

[2] Defendants also make a series of arguments, citing both state and federal law, weighing the probative value of the evidence against its potential for prejudice. *E.g.*, Defs.' 806(E) Br. at

The Third Circuit has long held that hospital records may be admitted as business records. *See Fuhrman v. Reading Co.*, 439 F.2d 10, 15 (3d Cir. 1971); *Rivers v. Union Carbide Corp.*, 426 F.2d 633, 638–39 (3d Cir. 2970). Rule 803(6) allows an exception to the rule against hearsay for:

> A record of an act, event, condition, opinion, or diagnosis if (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

The Comments for Rule 803(6) explain that the exception reflects the "unusual reliability" of business records, which is supplied by "systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation."

The presumption that business records are reliable because they are relied upon by businesses is even greater in the context of hospital records. As the Fourth Circuit has explained, "[t]here is a good reason to treat hospital record entry as trustworthy. Human life will often depend on the accuracy of the entry, and it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day tasks." *Thomas v. Hogan*, 308 F.2d 355, 361 (4th Cir. 1962); *see Rivers*, 426 F.2d at 638 (citing this passage).

Plaintiff argues that this Court should find the test results untrustworthy because HUMC did not maintain a formal chain of custody. Pl's. 806(E) Br. at 35–36. Because hospital records

---

10–11. Because those arguments have no bearing on whether the blood test is "trustworthy" as required by F.R.E. 803(6), the Court does not address them here.

enjoy a heightened presumption of reliability, this argument fails. Hospitals rely upon the accuracy of the blood tests to provide patient care, and have independent incentives to maintain accurate records. The importance of the lab results to the hospital's ability to care for patients, and the hospital's reliance upon them, demonstrate that they are trustworthy within the meaning of F.R.E. 803(6). *See Thomas*, 308 F.2d at 361 ("The 'missing link' in the chain of identification of the blood sample between the corpsman's taking the blood sample and [the doctor's] determination of the test result is supplied by the presumption of regularity which attaches under the [predecessor to F.R.E. 803(6)]."); *Stoud v. Roper Corp.*, No. 88 Civ. 1093 (KMW), 1990 WL 115610, at *3 (S.D.N.Y. Aug. 9, 1990) (not requiring chain of custody for blood test results); *Pieters v. B-Right Trucking, Inc.*, 669 F. Supp. 1463, 1465–66 (N.D. Ind. 1987) (same); *see also Natalie v. Barnett*, No. Civ. A. 97-1291, 1998 WL 175890, at *2 (E.D. Pa. 1998) (admitting blood alcohol test results as business records but not discussing chain of custody). The deposition testimony of Ms. Sampedro and Ms. O'Hara reveal a regular, systematic method of checking and maintaining accurate records.[3] The Court rejects Plaintiffs' argument and finds that no chain of custody is necessary for admissibility under F.R.E. 803(6).

Plaintiff's other arguments about trustworthiness also fail. Plaintiff argues that hospital records show different times of collection for the sample, ranging from 12:50 to 12:59. Pl's.

---

[3] Plaintiff, in his reply brief, shifts focus and argues that a chain of custody is required by F.R.E. 901. Pl's. Reply at 13. Even if this Court were to address Plaintiff's new argument, it is without merit because the document is self-authenticating under F.R.E. 902(11). In *Hulmes v. Honda Motor Co., Ltd.*, 936 F. Supp. 195, 207 n.9 (D.N.J. 1996), the court found the hospital's procedures sufficient to authenticate blood test results even though there was no chain of custody. The court noted that authentication under Rule 901 would have been unnecessary if the results had been admitted as business records under 803(6). *Id.* This statement is somewhat confusing because the court later clarified that the test results were admissible as business records. *See Hulmes v. Honda Motor Co., Ltd.*, 960 F. Supp. 844, 856 (D.N.J. 1997) (discussing earlier opinion and denying later-raised hearsay objection). Regardless, this Court agrees that no further authentication is needed for blood test results admitted under 803(6).

806(E) Br. at 36. But there is no testimony to the effect that "time of collection" is always recorded with minute-to-minute accuracy, or that the small differences would somehow indicate that the sample had been switched, misplaced, tainted, or otherwise unreliable.

Plaintiff also argues that the tests are untrustworthy because HUMC uses pre-labeled tubes in the trauma packs, and re-labels them in the lab. Pl's. 806(E) Br. at 30, 34. HUMC's practices, designed to increase efficiency for its "highest acuity patients," Sampedro Dep. at 10:25, do not rebut the heightened presumption of trustworthiness accorded to medical records.

Plaintiff's motion is denied. Similarly, Third Party Defendants' motion relying upon Plaintiff's brief is denied.

### c. Motion in limine to bar evidence of Plaintiff's alcohol use as unduly prejudicial

Plaintiff also moves to bar evidence of Plaintiff's alcohol use as unduly prejudicial. Pl's. 403 Br. at 24, ECF No. 148-1. Plaintiff argues that evidence of alcohol use is unduly prejudicial because there is no credible evidence of negligent operation and no supplementary behavioral evidence of intoxication. *Id.* Plaintiff contends that the evidence shows that Defendant Adams suddenly turned south into oncoming traffic in the northbound lane, giving Plaintiff no time to react. Accordingly, Plaintiff argues that evidence of alcohol use is not relevant because given Defendant Adam's conduct "the soberest of men would not have been able to avert the hazard." *Id.* at 30.

Defendants respond that evidence of alcohol consumption is probative of causation because a blood alcohol reading of .234 mg/dl is prima facie evidence of intoxication. Def.'s 403 Opp. at 6. Defendants argue that the Court should not rely on the police records proffered by Plaintiff in support of its causation argument. *Id.* at 8–9.

"The Third Circuit has held that, when confronted with the task of balancing the

prejudicial effect of evidence of alcohol consumption with its probative value, a district court

must look to state law to determine whether the prejudice to the party opposing the introduction

of such evidence would be substantial." *Hulmes v. Honda Motor Co., Ltd.*, 936 F. Supp. 195,

198–99 (D.N.J. 1996) (citing *Rovegno v. Geppert Bros., Inc.*, 677 F.2d 327, 329 (3d Cir. 1982));

*see Greiner v. Volkswagenwerk Aktiengeselleschaft*, 540 F.2d 85 (3d Cir. 1976).[4] New Jersey

Evidence Rule 403 reads in relevant part: "relevant evidence may be excluded if its probative

value is substantially outweighed by undue prejudice, confusion of issues, or misleading the

jury." N.J.R.E. 403. Because evidence of alcohol use has the ability to inflame the jury,

"evidence of alcohol consumption alone is prejudicial and will be excluded . . . unless there is

supplementary evidence that *reliably* supports a conclusion that the party against whom it will be

introduced was actually impaired or unfit to drive." *Wood v. U.S.*, 963 F. Supp. 1381, 1387–88

(D.N.J. 1997); *see Gustavson v. Gaynor*, 206 N.J. Super. 540, 545 (App. Div. 1985) ("The mere

fact that a driver had consumed some alcoholic beverages is by itself insufficient to warrant an

inference that the driver was intoxicated and that the intoxication was of such a degree as to

render him unfit to drive at the time of the accident."). New Jersey courts have provided a

---

[4] The Third Circuit has since applied F.R.E. 403, rather than state law, to consider the admissibility of evidence of earlier accidents in a negligence suit. *Forrest v. Beloit Corp.*, 424 F.3d 344, 354 (3d Cir. 2005). *But see id.* at 362 (Alito, J., concurring) (arguing that state law should apply under *Greiner*, 540 F.2d 85, but finding that the result would be the same). The court reaffirmed *Greiner* on the grounds that the admissibility of evidence of alleged intoxication is "arguably intertwined with the manner in which states seek to regulate primary behavior," and are therefore "substantive" under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). *Forrest*, 424 F.3d at 354 n.7. Despite disagreement by other circuits, *see, e.g., McInnis v. A.M.F., Inc.*, 765 F.2d 240, 245 (1st Cir. 1985) (arguing that the Third Circuit approach is inconsistent with Supreme Court precedent), the Third Circuit has not clarified whether it continues to adhere to this approach in light of legal development. Regardless, this Court would reach the same result under state or federal law. *See Forrest*, 424 F.3d at 362 (Alito, J., concurring); *Hulmes*, 936 F. Supp. at 206 n.8 ("I would reach the same result were I to apply Fed.R.Evid. 403.").

nonexclusive list of supplementary evidence of intoxication, including "excessive drinking, driving at an excessive speed, recklessness or erratic driving, drunken behavior at the accident scene, or similar acts suggestive of an unfitness to drive." *Gustavson*, 206 N.J. Super. at 545 (citing *Rovegno*, 677 F.2d at 330–31).

Plaintiff argues that there is no credible evidence of negligent operation or behavioral evidence of intoxication. Pl's. 403 Br. at 24.

New Jersey law prohibits operating a motor vehicle with a blood alcohol concentration of .08% or more. *See* N.J.S.A. 39:4-50. For purposes of the DWI laws, a BAC of .08% or higher is "irrebutable evidence of unfitness to drive." *Hulmes*, 936 F. Supp. at 203–04. Unsurprisingly, courts treat BAC readings over the legal limit as significant corroborating evidence of unfitness to drive when weighing the probative value of evidence of alcohol consumption against its possible prejudicial effect. *See id.* (predicting that New Jersey Supreme Court "would admit evidence of a blood alcohol content of .10% or higher as independent 'supplementary evidence' of unfitness to drive"); *see also Wood*, 963 F. Supp. at 1388 ("Evidence of a blood alcohol level at or above the legal limit of .10%, in and of itself, constitutes independent supplementary evidence of intoxication."); *Zygmaniak v. Porland*, 2007 WL 3101682, at *4 (N.J. Super. Ct. App. Div. Oct. 25, 2007) (affirming trial court's finding that .19% BAC reading following the accident was sufficient supplementary evidence of intoxication). At least one New Jersey appellate court has held that BAC test results themselves "bespeak intoxication." *Salemke v. Sarvetnick*, 352 N.J. Super. 319, 326 (App. Div. 2002).

Here, Defendants seek to introduce, among other things, BAC test results showing a blood alcohol content of .234, nearly three times the legal limit in the state of New Jersey. This alone constitutes significant corroborative evidence that Plaintiff was intoxicated, and that the

14

intoxication was such a degree to render him unfit to drive. *Hulmes*, 936 F. Supp. at 205; *Zygmaniak*, 2007 WL 3101682, at *4; *Salemke*, 352 N.J. Super. at 326; *Cusatis v. Reichert*, 267 Pa. Super. 247, 251–52 (Pa. Super. Ct. 1979) ("Indeed, a blood alcohol content of .10 percent or more of weight raises a presumption of intoxication.").

However, there is additional evidence corroborating unfitness to drive. Plaintiff admitted to consuming wine immediately before driving, rather than hours before, and stated that he could not recall how many drinks he had at Stony Hill Inn. Ortiz Interview at 10, Def's. Ex. 3 at 10; *Cf. Wood*, 963 F. Supp. at 1390 (finding no supplemental evidence of intoxication when driver consumed three beers over seven hours, none within the hour before the accident). Alcohol was detected on Plaintiff's breath before and after the accident. Possibly most important, McCarter testified that he saw the tractor trailer and was able to stop, while Plaintiff drove into it without applying his brakes. *See Guzzi v. Clarke*, 252 N.J. Super. 361, 366 (N.J. Super. Ct. 1991) (finding evidence of alcohol consumption probative because if believed, it would "explain[] why [defendant], with a 550-foot clear line of vision, did not react to the presence of the stalled car until he was about 100 feet from it").

Taken together, there is adequate supplemental evidence that Plaintiff was intoxicated, and that the intoxication was of such a degree that it rendered him unfit to drive. Plaintiff's motion is denied.

Similarly, Third Party Defendants' motion relying upon Plaintiff's brief is denied.

## II.     Plaintiff's Motion for Summary Judgment

Plaintiff argues that there are no disputed issues of material fact as to the proximate cause of the collision. Pl's. Summ. J. Br. at 20. Plaintiff contends that the sole cause of the collision was Defendant Adams' negligent and reckless operation of the tractor. *Id.* at 27. Plaintiff attacks

the integrity of Defendants' expert witness, and argues that the blood alcohol report is not probative of Plaintiff's negligence. Plaintiff argues Defendant Adams violated various New Jersey automobile statutes, and was therefore negligent per se.

Defendants respond that there are numerous issues of fact as to the proximate cause of the collision where plaintiff was clearly intoxicated at the time, had a clear line of vision for about a quarter of a mile before impact, never applied his brakes or attempted to avoid colliding with the tractor trailer. Defs.' Summ. J. Opp at 15.

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute between the parties must be both genuine and material to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). A disputed fact is material where it would affect the outcome of the suit under the relevant substantive law. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A dispute is genuine where a rational trier of fact could return a verdict for the non-movant. *Id.*

The movant bears the initial burden to demonstrate the absence of a genuine issue of material fact for trial. *Beard v. Banks*, 548 U.S. 521, 529 (2006). Once the movant has carried this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" in question. *Scott,* 550 U.S. at 380 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Each party must support its position by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Scott,* 550 U.S. at 380. At this stage, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter." *Anderson*, 477 U.S. at 249.

## DISCUSSION

To sustain an action for negligence, a plaintiff must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." *Townsend v. Pierre*, 221 N.J. 36, 51 (2015) (quoting *Polzo v. Cnty. Of Essex*, 196 N.J. 569, 584 (2008)). To prevail on summary judgment, Plaintiffs must demonstrate that Defendant Adam's alleged negligence was a proximate cause of the collision. *Id.*

In New Jersey, proximate cause consists of "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* (quoting *Conklin v. Hannoch Weisman*, 145 N.J. 395, 418 (1996)).

"Proximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." *Scafidi v. Seiler*, 119 N.J. 93, 101 (1990); *see Townsend*, 221 N.J. at 59–60 ("The issue of causation is ordinarily left to the factfinder."). Accordingly, this Court may only grant summary judgment on the issue of proximate causation in the "extraordinary case in which reasonable minds could not differ on whether that issue has been established." *Townsend*, 221 N.J. at 59–60 (quoting *Fleuhr v. City of Cape May*, 159 N.J. 532, 507–09 (1999)).

This is not such an extraordinary case that the issue of proximate causation should be removed from the consideration of a factfinder. Plaintiff has offered the opinion testimony of

Police Officer Gallagher, who testified that the collision was caused by Defendant Adams' creating a hazard by blocking the roadway. Pl.'s Summ. J. Br. at 11.[5] In response, Defendants have offered the expert report of John McManus in which he concludes that "the primary contributing factor to this accident was the failure of Mr. Ortiz to observe what was to be seen." McManus Report at 13, Maggiano Cert. Ex. M, ECF No. 149-21. Defendants also offer the testimony of eyewitness Matthew McCarter that Plaintiff did not apply his brakes before colliding with the tractor trailer despite having a clear view of the truck for over a quarter mile. McCarter 2010 Dep., Maggiano Cert. Ex. I1, ECF No. 149-15. Defendants have also offered evidence of alcohol consumption including a blood alcohol test result showing a BAC more than twice the legal limit. HUMC Lab Report, Magiano Cert. Ex. O(7), ECF No. 147-30.

This dispute about the proximate cause of the collision must be presented to the finder of fact. *See Del Tufo v. Township of Old Bridge*, 147 N.J. 90, 111 (1996) ("Unless public policy dictates otherwise, whenever a plaintiff's conduct contributes to an event negligently caused by defendant, the plaintiff's comparative fault should be submitted to the factfinder for determination."); *Latta v. Caulfield*, 79 N.J. 128, 133 (1979) ("[A] jury must consider the actions of both plaintiff and the defendant in determining whether one or both proximately caused the accident.").

Plaintiff argues that the McManus Report does not create a factual dispute because the report relied on testimony of eyewitness Matthew McCarter which was later disavowed. Eyewitness McCarter had initially testified based on his memory that the collision occurred in the left lane and was a side collision. McCarter 2010 Dep. 42:3-7. After that deposition, it

---

[5] Defendants contend that Gallagher is not permitted to give opinion testimony as to the cause of the accident under F.R.E. 701. Defs'. Summ. J. Br. at 17. The Court will not rule on this issue at this juncture, as it is unnecessary for resolution of the pending motions.

appears that Plaintiff's attorney Michael Maggiano mailed McCarter copies of the police reports

and sought to depose him again. McCarter 2013 Dep. 26:19–20, Maggiano Cert. Ex. I2, ECF No.

149-16. At the later deposition, McCarter stated that he had been inaccurate about the precise

location of the accident and arrangement of vehicles, and that the accident was a head on

collision in the righthand lane. *Id.* at 14:10–20.

     After creating his report, expert witness McManus testified that if McCarter was

inaccurate in his testimony, then his analysis was incorrect. McManus Dep. 78:17–18, Maggiano

Cert. Ex. L1, ECF No. 149-19. Plaintiff argues that the Court should disregard the McManus

Report as a result of McCarter's later deposition. This argument is rejected because Plaintiff

mischaracterizes expert witness McManus' testimony. When he stated that his conclusions

would be incorrect if McCarter's testimony was inaccurate, McManus was referring to the

testimony as a whole, not specific details about whether the accident was head-on and in the

right lane or not. McManus Dep. 76:15–18 ("If you eliminate McCarter's testimony and you *take

that completely out of the equation*, the only statements – the only thing you have left are the

statements and the other testimony, then yes." (emphasis added)). This Court will not disregard

Defendants' expert report in its entirety because McCarter's later testified that he had been

inaccurate about these specific details of the incident. Moreover, there is significant other

evidence from which a jury could infer that Plaintiff's failure to observe the tractor trailer was

the cause of the accident.

     Plaintiff also argues that this Court should grant summary judgment because Defendant

Adams violated New Jersey traffic statutes and was therefore negligent per se. Pl's. Summ. J. Br.

at 23. Plaintiff contends that "defendant Adams' actions were clearly statutory violations

(N.J.S.A. 39:4-97 careless driving and N.J.S.A. 39:4-85.1, wrong way on a one-way street)." *Id.* at 24.

"Ordinarily, the determination that a party has violated a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability. The reason is that statutes rarely define a standard of conduct in the language of common-law negligence." *Eaton v. Eaton*, 226 N.J. Super. 62, 66 (App. Div. 1988). However, negligence per se is applicable to statutes that incorporate the standards of the common law. *Id.*

The careless driving statute prohibits negligence itself because it invokes the common law standard by proscribing driving a vehicle "carelessly, or without due caution." N.J.S.A. 39:4-97; *see Eaton*, 119 N.J. at 643. Therefore, "New Jersey law is crystal clear that where a defendant has violated the careless driving statute [N.J.S.A. 39:4-97], that defendant has been negligent: 'A violation of the careless driving statute was not merely evidence of negligence: it was negligence.'" *Carnero v. Deitert*, 10 F. Supp. 2d 440, 444 (D.N.J. 1996) (quoting *Eaton v. Eaton*, 226 N.J. Super. 62, 66 (App. Div. 1988)).

Plaintiff has not established the underlying statutory violation of the careless driving statute that would make Defendant Adams' conduct negligent per se. Defendant was not convicted for a violation of N.J.S.A. 39:4-97, nor did he plead guilty to the same. Plaintiff's assertion that Defendant Adams "clearly" violated the statute does not make it so – Plaintiff cannot rely on negligence per se without first establishing that Defendant Adams violated the careless driving statute. *Cf. Carnero*, 10 F. Supp. 2d at 444 ("Where a driver has pled guilty to careless driving, summary judgment in favor of plaintiff on the issue of liability is appropriate."); *Eaton*, 199 N.J. at 642–43 ("When, however, a statute specifically incorporates a common-law

standard of care, a *jury finding of a statutory violation* constitutes a finding of negligence." (emphasis added)).[6]

Plaintiff also alleges that Defendant violated other statutory provisions such as driving the wrong way on a one-way road under N.J.S.A. 39:4-85.1 and improperly utilizing head beams under N.J.S.A. 39:3-60. Because neither of the other statutes referred to by Plaintiff incorporates the common law standards or invokes similar language, any violation of those statutes may be evidence of negligence, but would not constitute negligence per se. *See Kelly v. Walker-Grassi*, No. A-2484-05T5, 2007 WL 162285, at *6 (N.J. Super. Ct. App. Div. Jan. 24, 2007) (finding failure to instruct jury on negligence per se not erroneous because the statute was not co-extensive with a common law duty).

Plaintiff's motion for summary judgment is denied.

### III.    Third Party Plaintiff's Cross Motion for Summary Judgment

Third Party Defendants J and B also move for summary judgment. ECF No. 160. J and B argues that Third Party Plaintiffs have failed to show that Wilfredo Ortiz was visibly intoxicated. J and B Summ. J. Br. at 9, ECF No. 160-1. J and B argue that this Court relied on Dr. Saferstein's expert report in denying its earlier motion for summary judgment, and that the expert report relied on the blood alcohol test taken at HUMC. *Id.* at 6, 14. J and B argues that if this Court grants the motions in limine and excludes the blood test results, then all cross-claims should be dismissed. *Id.* at 14.

---

[6] Plaintiff attempts to establish that Defendant Adam's conduct constituted a statutory violation by providing expert testimony of David Stopper that Defendant Adams was in violation of the Federal Motor Carrier Safety Act and New Jersey Traffic Law when he executed the jackknife maneuver. Pl's. Summ. J. Br. at 22. This argument is rejected out of hand.

Third Party Plaintiffs Adams and Ruan respond that the blood alcohol test and testimony of Dr. Saferstein present evidence sufficient to establish a *prima facie* case of liability for contribution and indemnity under the Dram Shop Act. Adams Summ. J. Opp. at 21, ECF No. 161. Third Party Plaintiffs contend that Third Party Defendants raise no new arguments, and request that this Court once again find that material factual questions exist. *Id.* at 25.

Because the Court has denied the motions in limine to bar evidence of alcohol use and the blood alcohol test results, Third Party Defendants' motion for summary judgment is denied. There is ample evidence in the record to create a factual dispute about Ortiz's visible intoxication, including the expert report of Dr. Saferstein, the blood alcohol test results taken shortly after leaving Stony Hill Inn, the multiple observers who noted alcohol on Ortiz's breath, and Ortiz's alleged failure to activate his brakes or otherwise react to the existence of the tractor trailer in his line of travel. The Court affirms its earlier ruling, and denies the cross-motion for summary judgment.

## CONCLUSION

Plaintiff's motions in limine (1) for an adverse inference due to spoliation; (2) to bar blood alcohol lab results as untrustworthy; and (3) to bar evidence of alcohol use as unduly prejudicial are denied. Similarly, Third Party Defendants' motions relying upon Plaintiff's briefs are denied.

Third Party Defendants' cross motion for summary judgment is also denied. An appropriate order follows.

DATE: _12 July 2018_

William H. Walls

Senior United States District Court Judge